IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ST. PAUL SURPLUS LINES INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-11-0403 |
| DAVIS GULF COAST, INC. and DAVIS OPERATING COMPANY, | § § § | |
| Defendants. | § § | |

MEMORANDUM AND ORDER

Pending are Defendants Davis Gulf Coast Inc.'s and Davis Operating Company's (collectively "Davis")[1] Motion for Partial Summary Judgment (Document No. 12) and Plaintiff St. Paul Surplus Lines Insurance Company's ("St. Paul") Cross-Motion for Summary Judgment (Document No. 18). The Court held oral arguments on the motions, and after carefully considering those arguments, the motions, responses, and the applicable law, the Court concludes as follows.

I. Background

The underlying facts in this case are not in dispute. Davis operates the Wynne Lease, an oil and gas lease on Matagorda Island,

---

[1] Davis Operating Company is the named insured; Davis Gulf Coast is an additional named insured.

Texas.[2]  On March 4, 2010, Davis's representatives inspected its facilities at the lease site with representatives of the United States Environmental Protection Agency and discovered oil leaking into the environment.[3]  Davis spent $161,165.58 cleaning up the site; the clean-up work was completed around September 2010.  It was not until September 22, 2010, more than 200 days after Davis learned of the oil leak, that Davis first reported it to St. Paul along with its request for reimbursement of its clean-up costs under the Oil and Gas Commercial General Liability Policy (the "Policy") issued by St. Paul.  The Policy provides limited coverage for clean-up costs that result "from a sudden and accidental incident," which is a defined term in the Policy.  St. Paul thereafter denied coverage because Davis had failed to report the leakage within 90 days after it became known to Davis, which 90-days reporting provision is part of the Policy's definition of a "sudden and accidental pollution incident."  It is undisputed that Davis did not comply with the 90-days reporting requirement, which is St. Paul's sole reason for denying coverage under the Policy. St. Paul does not claim that it was prejudiced by Davis's failure to comply with the 90-days requirement.

St. Paul seeks a declaratory judgment that it has no duty to indemnify Davis for any costs it incurred in remediating the spill

---

[2] Document No. 12, ex. B.

[3] Id.

of crude oil on Matagorda Island under the St. Paul Policy.[4]  Davis
counterclaimed for a declaratory judgment that St. Paul must
indemnify it for those costs, and also claiming breach of contract
and bad faith.

## II.  Discussion

### A.  Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary
judgment if the movant shows that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a
matter of law."  FED. R. CIV. P. 56(a).  Once the movant carries
this burden, the burden shifts to the nonmovant to show that
summary judgment should not be granted.  Morris v. Covan World Wide
Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing
a properly supported motion for summary judgment may not rest upon
mere allegations or denials in a pleading, and unsubstantiated
assertions that a fact issue exists will not suffice.  Id.  "[T]he
nonmoving party must set forth specific facts showing the existence
of a 'genuine' issue concerning every essential component of its
case."  Id.  "A party asserting that a fact cannot be or is
genuinely disputed must support the assertion by: (A) citing to
particular parts of materials in the record . . .; or (B) showing

---

[4] Document No. 4 at 6.

that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

4

B.   <u>Choice of Law</u>

Federal courts apply the forum state's conflicts-of-law rules to determine what law governs.  <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 61 S. Ct. 1020, 1021 (1941).  Texas courts first determine whether there is a conflict between Texas law and the other potentially applicable law.  *See* <u>SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Sciences, Inc.</u>, 128 S.W.3d 304, 314 (Tex. App.--Dallas 2004, no pet.) ("[W]e should first determine if the laws are in conflict. If the result would be the same under the laws of either jurisdiction, there is no need to resolve the choice of law question.").  If there is a conflict in the law on an issue, Texas courts apply the "most significant relationship" test of the Restatement (Second) of Conflict of Laws § 188 to determine the law applicable to a contract dispute.  <u>Minn. Mining & Mfg. Co. v. Nishika Ltd.</u>, 953 S.W.2d 733, 735 (Tex. 1997); <u>Caton v. Leach Corp.</u>, 896 F.2d 939, 943 (5th Cir. 1990); *see also* <u>Duncan v. Cessna Aircraft Co.</u>, 665 S.W.2d 414, 421 (Tex. 1984).  A determination of the "most significant relationship" to a state, when faced with a question of contract law, includes an analysis of:

> (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.  These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 188 (1971).  "Application of the most significant relationship analysis turns on the qualitative nature of the particular contacts with a state rather than the mere number of those contacts."  Bailey v. Shell Western E&P, Inc., 609 F.3d 710, 722-23 (5th Cir. 2010), cert. denied, 131 S. Ct. 428 (2010) (citing Gutierrez v. Collins, 583 S.W.2d 312, 319 (Tex. 1979)).  The parties agree that Oklahoma has the most significant relationship to the Policy, which conclusion is supported by the summary judgment evidence.  However, as will be seen below, there appears to be no conflict between Oklahoma law that would apply to construction of the Policy and Texas law, which has been applied in several precedents directly on point.

C.    Analysis

    Oklahoma law requires that, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."  OKLA. STAT. ANN. tit. 15, § 157 (West 2012).  The Oklahoma Supreme Court has emphasized that:

> Parties to insurance contract are at liberty to contract for insurance to cover such risks as they see fit and are bound by the terms of contract and courts will not undertake to rewrite terms thereof.  The construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result.

Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla. 1991)
(quoting Wiley v. Travelers Ins. Co., 534 P.2d 1293, 1295 (Okla.
1974)).

Davis's Policy covers bodily injury and property damage
liability, pollution clean-up costs, personal injury liability,
advertising injury liability, and medical expenses.  The Policy has
the characteristics of an occurrence policy and is advertised as
such, but with advertisement also that "[p]ollution coverage
includes a full 30-day knowledge period and a 90-day reporting
period for pollution incidents."  The Policy's coverage for
pollution clean-up costs, therefore, has the characteristics of a
claims-made policy with respect to its limited pollution coverage.
The Policy provides in the "Pollution clean-up costs" section, the
following:

> We'll pay amounts you voluntarily incur, or you're
> legally required to pay, for covered pollution clean-up
> costs that result from a **sudden and accidental pollution
> incident** which:
>
> - begins while this agreement is in effect;
>
> - results from your work or your completed work in
>   the performance of your oil or gas operations,
>   other than such work or completed work that is or
>   was performed at, on, in, or from a waste site; and
>
> - doesn't result from any intentional and willful
>   violation of any governmental law, regulation, or
>   rule by you or anyone acting on your behalf.[5]

---

[5] The Policy at StPaul_00022 (emphasis added).

7

Case 4:11-cv-00403   Document 31   Filed in TXSD on 06/13/12   Page 8 of 16


"**[S]udden and accidental pollution incident,**" is a defined term, included in the Policy's "List of Terms with Defined Meanings Shown in This Agreement," with the index showing that the definition is on page 4 of 33, which also is located in the "Pollution clean-up costs" coverage section of the Policy:

> *Sudden and accidental pollution incident* means the discharge, dispersal, escape, or release of a pollutant that:
>
> - is sudden and accidental;
>
> - begins on a specific date and at a specific time while this agreement is in effect;
>
> - is first known within 30 days of its beginning by you or any of your employees, your operating agent or any of its employees, or your pumper-gauger or any of its employees;
>
> - any protected person, your operating agent, or your pumper-gauger attempts to end as soon as possible after it first becomes known by you or any of your employees, your operating agent or any of its employees, or your pumper-gauger or any of its employees; and
>
> - **is reported to us within 90 days after it first becomes known to you** or any of your employees, your operating agent or any of its employees, or your pumper-gauger or any of its employees.[6]

In giving a "natural and reasonable" construction to the Policy, "fairly constructed to effectuate its purpose," <u>Dodson</u>, 812 P.2d at 376, the Court first recognizes that the specific pollution clean-up risk covered by this Policy is limited to a "sudden and

---

[6] <u>Id.</u> at StPaul_00023 (emphasis added).

accidental pollution incident," which the Policy defines to require--among other things--that the discharge, dispersal, escape, or release of a pollutant be "reported to [St. Paul] within 90 days after it first becomes known to [Davis]." This is not, therefore, a general notice requirement but rather is an integral part of the definition of the risk covered.[7]   The "Oil and Gas Commercial General Liability Protection" section of the Policy, at page 1 of 33, states:

> Certain terms that have or include defined meanings shown in this agreement are listed in the List Of Terms With Defined Meanings Shown In This Agreement section, which also shows where their defined meanings are located. This agreement should be read carefully to determine the extent of the coverage provided to you, and other protected persons.

Under Oklahoma law, this Court may "not undertake to rewrite terms" of the Policy.  Dodson, 812 P.2d at 376.  The Policy is internally consistent in its use of the defined term, "sudden and accidental pollution incident," using the term more than 20 times outside of the "Pollution clean-up costs" coverage section where the term is defined.  "Sudden and accidental pollution incident" is

---

[7] In contrast, the Policy does have general notice provisions for property or other first-party protection: "As soon as possible, tell us what happened," followed by a listing of specific information requested regarding time, place, specific nature of the loss, likely cause of the loss, etc.  A similar general notice clause is provided for liability protection: "As soon as possible after having knowledge of the accident, act, error, event, incident, offense, omission, tell us what happened," followed by specific kinds of information that should be provided.

mentioned repeatedly both in the coverage sections of the Policy and in the exclusions set forth in the Policy. When hypothetical examples are set out in the Policy to explain when and how the Policy applies to clean-up costs for a sudden and accidental pollution incident, the examples consistently state a specific date and time upon which the accident occurred and the specific date on which the insured reports the spill or the incident to the insurance company, such report being made to the insurance company in each example in fewer than 90 days.[8]

Davis points to a clause in the "Pollution clean-up costs coverage" section that requires that such costs be "reported to us within one year of the ending date of that pollution work," and argues that such proviso results in an ambiguity on the reporting requirement.[9]  The Court finds no ambiguity.  The 90-days provision is part of the definition of the specific "sudden and accidental pollution incident," for which coverage is provided.  On the other hand, the one year proviso is a requirement as to when the insured must report the *amount* of the costs and expenses incurred for clean-up of a covered event.  The two provisions serve different functions, and the Court will not strain to find an ambiguity where one does not exist.  *See* Dodson, 812 P.2d at 376 (in interpreting an insurance contract "neither forced nor strained construction

---

[8] *See* the Policy at StPaul_00044 and 00080.

[9] The Policy at StPaul_00022.

will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a favorable consideration to either party than that expressed in the contract").

Davis relies on Oklahoma's well-established notice-prejudice rule to argue that St. Paul must show prejudice in order to deny coverage based on the 90-days notice provision. *See* Dixon v. State Mut. Ins. Co., 126 P. 794, 795 (Okla. 1912) ("Unless time was made of the essence of the contract, the company cannot escape liability for the loss, except it appears that they were injured by the failure of the insured to comply with the letter of the contract as to time for giving notice and making proof."); Dang v. UNUM Life Ins. Co. of America, 175 F.3d 1186, 1190 (10th Cir. 1999); Cont'l Cas. Co. v. Beaty, 455 P.2d 684, 688 (Okla. 1969).  Those cases and Oklahoma's notice-prejudice rule would presumably apply if the denied coverage claim here were for bodily injury or property damage liability, personal injury liability, or other coverages under the Policy which, unlike the pollution clean-up costs coverage, have no reporting requirement as part of the definition of the particular risk covered.

In contrast, Oklahoma also recognizes that time is of the essence in claims-made insurance coverage. *See* State ex rel. Crawford v. Indemn. Underwriters Ins. Co., 943 P.2d 1099, 1100 (Okla. Civ. App. 1997); Ass'n of County Comm'rs of Okla. v. Nat'l

Am. Ins. Co., 116 P.3d 206, 211 (Okla. Civ. App. 2005); Am. Cas. Co. of Reading, Pa. v. F.D.I.C., 821 F. Supp. 655, 663 (W.D. Okla. 1993), *aff'd*, 33 F.3d 62 (10th Cir. 1994) (unpublished op.).

In Association of County Commissioners, the Oklahoma Court of Civil Appeals explained the difference:

> In a claims made policy, coverage is triggered when an insured becomes aware of either claims against the insured or occurrences that might give rise to a claim against the insured and notifies the insurer of such a claim or occurrence during the policy period. In claims made policies, the date of notice is paramount--both the date the insured has notice of a claim against it and the date the insured forwards notice of that claim to the insurer. Because of the importance of the date of notice in a claims made policy, it has been held that the rule that late notice is acceptable where the insurer has not been prejudiced is inapplicable to claims made policies.

116 P.3d 206, 211 (internal citations omitted). The practicality of claims made insurance coverage--from the standpoint of risks assumed by the insurer and costs borne by the insured--is succinctly explained in Am. Cas. Co. of Reading, PA v. F.D.I.C., 821 F. Supp. 655, 663 (W.D. Okla. 1993):

> An occurrence policy creates open-ended liability for the insurer and thus would command significantly higher premiums. In contrast the claims-made policy limits the insurer's liability to a term certain and therefore can be offered at much more reasonable and thus affordable rates.

It is common knowledge that oil and gas pollution clean-up costs can be enormous, and any comprehensive general liability occurrence

policy with open-ended liability for that risk would undoubtedly carry with it a commensurately enormous premium.  The bargain struck here by Davis and St. Paul is quite different.  Davis acquired insurance only for pollution clean-up costs arising from a release of a pollutant that is "sudden and accidental," beginning on a specific date and time, which becomes known to the insured within 30 days of the release and is reported by the insured to St. Paul within 90 days after the insured learns of it.  Thus, St. Paul by definition effectively assumed a rolling window of exposure for a maximum of 120 days after the date of any sudden and accidental pollution incident.  Concomitantly the premium for such limited and narrowly-defined pollution clean-up costs, in the words of Judge Cauthron of the Western District of Oklahoma, would be "much more reasonable and thus affordable."  Id.  In sum, the 90 days reporting requirement at issue here is not a general notice provision that requires the insurer to show prejudice if the insured does not comply, but rather, in language approved by Oklahoma caselaw, is "a definition of coverage."  Crawford, 943 P.2d at 1100.

Neither the parties nor the Court have found an Oklahoma case construing this pollution clean-up coverage provision, but there are persuasive cases applying the law of Texas, where this oil leak occurred, which are consistent with this Court's conclusion on Oklahoma law.  The Fifth Circuit in Matador Petroleum Corp. v. St.

Paul Surplus Lines Ins. Co., 174 F.3d 653 (5th Cir. 1999), affirmed summary judgment for the insurer, which denied coverage in an almost identical case, where the pollution incident was required to be reported to the insurer within 30 days of its beginning, and the insured did not report until 38 days after the incident occurred. The Court wrote:

> [U]nder the plain language of the endorsement, timely reporting of the claim constituted one of the events necessary to trigger coverage. We will respect the plain language of the limitation contained in the endorsement. Matador received what it bargained for under the endorsement, with premiums presumably reduced to reflect the limited coverage. Whether St. Paul suffered prejudice as a result of Matador's late notice is irrelevant. The district court properly enforced the insurance policy according to its terms.

Id. at 660. See also Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co., 112 F.3d 184, 189 (5th Cir. 1997) ("Because [insureds] failed to comply with this [90 days] notice requirement, coverage for the occurrence was not reinstated."); Purvis Operating Co., Inc. v. St. Paul Surplus Lines Ins. Co., MO-10-CV-147, (W.D. Tex. Sept. 20, 2011) (reaching the same holding on a policy with the same pollution clean-up coverage as in the present case).

Davis seeks to distinguish Matador and C.A. Turner because the coverage was provided in an endorsement, or a "buy-back clause." An endorsement, however, is fully part of the whole policy and is applied in the context of the whole policy. See Fossil Creek

14

Energy Corp. v. Cook's Oilfield Servs., 242 P.3d 537, 543 (Okla. Civ. App. 2010) ("all three endorsements, by modifying the Coverage Form, are part of the Coverage Form").  There is no principled reason to construe a clause contained in an endorsement to an insurance contract differently from the construction of that same clause if it is written into the body of the insurance contract at the outset.  Certainly, the Court has found nothing in Oklahoma law to require such disparate constructions.

Finally, because St. Paul did not breach the insurance contract by denying reimbursement, Davis's remaining claim alleging that St. Paul breached its duty to deal fairly and to act in good faith with its insured, is denied as a matter of law.

## III.  Order

For the foregoing reasons, it is

ORDERED that St. Paul's Cross-Motion for Summary Judgment (Document No. 18) is GRANTED, and it is declared that Plaintiff St. Paul Surplus Lines Insurance Company has no duty to indemnify Defendants Davis Gulf Coast, Inc. and Davis Operating Company under the Oil & Gas Commercial General Liability Policy No. MU05540547 issued by St. Paul to Defendant Davis Operating Company for the policy period of August 1, 2009 to August 1, 2010, for any costs Defendants incurred in remediating the spill of crude oil on Matagorda Island, Texas; and Defendants' counterclaims for breach

15

of contract and bad faith are DISMISSED with prejudice.  It is further

ORDERED that Defendants' Motion for Partial Summary Judgment (Document No. 12), and all other pending motions, are DENIED.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 13th day of June, 2012.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

16